# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

JONATHAN JOHNSON,

                                   Plaintiff,

        vs.                                  9:14-CV-815
                                                   (DNH/ATB)

DAVID ROCK, et al.,

                                   Defendants.

---

JONATHAN JOHNSON, Plaintiff pro se
DAVID J. SLEIGHT, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). On July 7, 2014, defendants removed this action from the New York State Supreme Court, Franklin County. (Dkt. No. 1). In this civil rights complaint, plaintiff alleges that he was the subject of a "retaliatory transfer" from Elmira Correctional Facility ("Elmira") to Upstate Correctional Facility ("Upstate") on November 16, 2006, and that after he arrived at Upstate, some of the defendants failed to protect him from attacks by unknown gang members in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment. (Compl.) (Dkt. No. 2). Plaintiff seeks a substantial amount of monetary damages.

Presently before the court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 2). Plaintiff has responded in opposition to the motion and

has moved to remand this case to New York State Supreme Court. (Dkt. Nos. 4, 5).

Plaintiff's motion to remand contains a request for "sanctions" against defendants for

the "impropriety of removal" pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1447. (Dkt.

No. 5 at 1-2). Defendants have responded in opposition to the motion to remand. (Dkt.

No. 6). Defendants have also requested that the court consider sanctions against

plaintiff based upon his vexations litigation. (Dkt. No. 2-1 at 2). For the following

reasons, this court will deny plaintiff's motion to remand and recommend that the

defendants' motion to dismiss be granted, but will not recommend that sanctions be

assessed at this time, either against plaintiff or against defendants.

## I.    <u>Facts and Procedural Background</u>

Plaintiff alleges that in "2000," he filed an Article 78[1] proceeding in Franklin

County Court: *Matter of Johnson v. Lucien LeClaire*, Index. No. 2007-0204 – RJI No.

16-1-2007-0078.[2] Plaintiff seems to claim that his Article 78 petition raised claims of

"gang member[] enemies at Upstate . . . in June 2000." (Compl. ¶ 4). Plaintiff states

that on "or about" June 23, 2000, plaintiff was transferred from Upstate to a one-person

cell at Southport Correctional Facility ("Southport") for "unsuitable behavior." (Compl.

¶ 5). Plaintiff states that he was confined at Southport for six years until he was

transferred to Elmira in January 2006. (Compl. ¶ 6).

---

[1] Plaintiff is referring to Article 78 of the New York State Civil Practice Law & Rules. N.Y. Civ. Prac. L. & R. Art. 78, § 7000 et seq. The issues that may be raised in an Article 78 proceeding are listed in section 7803. It is not completely clear from the complaint what claims plaintiff raised in that proceeding.

[2] It is odd that an action filed in 2000 would have received a 2007 Index Number and RJI number, but this discrepancy does not affect this court's decision.

Plaintiff claims that on November 13, 2006, he and the guards who were escorting him to the shower were "thrown on" by an inmate on the gallery in the Special Housing Unit ("SHU"). (Compl. ¶ 7). The inmate in question was subsequently moved to a different cell location so that he and plaintiff would not be taken to the shower at the same time. Plaintiff asked Superintendent John Burge[3] to "preserve[] all [the] evidence," which included a video tape of the "incident" for "future court actions." (Compl. ¶¶ 8-9). Plaintiff claims that on November 15, 2006, Superintendent Burge came through the SHU area and informed the plaintiff that he "was getting rid of him" because of his intent to file a lawsuit stemming from the November 13, 2006 incident. (Compl. ¶ 10). Plaintiff alleges that this "retaliatory transfer" occurred the next day (November 16, 2006).

Plaintiff claims that upon his arrival at Upstate, he "informed" defendants Brian Fischer, Theresa Lynn-Boyea, Norm Bezio, Lucien LeClaire, "and other officials" that plaintiff had enemies/gang members at Upstate. (Compl. ¶ 12). It is unclear from the complaint, but it appears that plaintiff alleges that the transfer from Elmira was requested by defendants Anthony Carozzoni (a counselor at Elmira) and Superintendent Burge. (Compl. ¶ 13). Plaintiff states that defendant John Carvill (Classification Analyst for the Department of Corrections and Community Supervision ("DOCCS")) caused the transfer from Elmira to Upstate, even though plaintiff had been transferred out of Upstate in 2000. (*Id.*)

Plaintiff alleges that on April 25, 2007, he wrote to defendants Fischer, Knapp-

---

[3] The court notes that Superintendent Burge is not a defendant in this action.

David, and LeClaire informing them of the numberous "inmate gang members at Upstate to no avail to date." (Compl. ¶ 14). Plaintiff claims that on November 16, 2006, he also told defendant Bezio (Deputy Superintendent for Security at Upstate) about the enemy gang members, but to "no avail to date." (Compl. ¶ 15).

Plaintiff claims that on an unspecified date in December of 2007, he was "attacked" by an "unknown gang member" on the Upstate/Downstate Correctional Bus coming from Federal custody back to Upstate. (Compl. ¶ 16). Plaintiff claims that he and his family were attacked by "gang members" in May of 2008 in the Upstate visiting room. (Compl. ¶ 17). Plaintiff states that on January 7, 2011, he was attacked by a "gang member" in the holding pen area at Upstate. (Compl. ¶ 18). The fourth alleged attack occurred on August 27, 2012 on the Upstate "draft bus" and subsequently, in the draft room area. (Compl. ¶ 19). Plaintiff claims that unnamed guards conspired to "cover up" this attack. (*Id.*) The fifth attack occurred on October 3, 2012, when feces was thrown on plaintiff during recreation in "Eight Building." (Compl. ¶ 20).

Plaintiff alleges that on October 24, 2012, plaintiff was being escorted back from court proceedings, and the "prison guard" who was assigned to the console, opened the door for "inmate gang members" to attack the plaintiff. (Compl. ¶ 21). However, plaintiff states that the gang member "attempted to come at plaintiff[]." (*Id.*) Although the complaint lists a "Seven[th] Attack" in December of 2012, plaintiff does not describe any attack during that time period. (Compl. ¶ 22). He claims that "gang members" are putting notes on meal trays, stating that plaintiff raped a child. Plaintiff claims that this conduct put his life in danger and claims that no actions have been

4

taken to protect his safety at Upstate.[4] (*Id.*)  Plaintiff claims that he has been confined at Upstate together with inmates who are on his "separatee" list, and that in 2008, he was housed in "Eleven Building" wherein a "listed enemy" was also housed, "under the supervision of David Rock, Trudy Lynn-Boyea, Brian Fischer, John Cavill, Theresa Knapp-David, Lucien LeClaire, and Douglas Botford.[5] (Compl. ¶ 23).  Plaintiff also claims that defendant Carozzoni "conspired" with defendants Carvil and Superintendent Burge to have plaintiff transferred to Upstate "where he is surrounded by gang members to date." (Compl. ¶ 24).

Plaintiff states that he brings this action pursuant to section 1983, raising claims of "deliberate indifference, cruelty [sic] and unusual punishment and retaliatory acts for court's access." (Compl. ¶ 25).

## II.    Motion to Remand

### A.    Legal Standards

#### 1.    Removal

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441; *see Lincoln Property Co. v. Roche*, 546 U.S. 81, 83 (2005) (explaining that section 1441

---

[4] Plaintiff does not allege any incidents or injuries resulting from this alleged conduct by unnamed "gang members."

[5] Defendant Botford is the Director of Classification and Movement.  This is the first and only time that he is mentioned in the complaint.

"authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court). However, "'[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).[6]

The procedural requirements for removal to federal court are as follows:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). The thirty-day window for removal contained in section 1446(b)(1), while not jurisdictional, is "rigorously enforce[d]" by courts absent a finding of waiver or estoppel. *Somlyo v. J. Lu–Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991), *superseded on other grounds by rule as stated in Contino v. United States*, 535 F.3d 124, 127 (2d Cir. 2008).

---

[6] There are exceptions to removal jurisdiction. Under 28 U.S.C. § 1445, certain civil actions against railroads or common carriers, civil actions arising under the workers' compensation laws of a state, and any civil action arising under section 40302 of the Violence Against Women Act, may not be removed to any district court of the United States. Plaintiff does not claim that this case is in any category of nonremovable actions under section 1445.

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a federal question is presented or when the parties are of diverse citizenship, and the amount in question exceeds $75,000. In this case, defendants' removal was pursuant to Section 1331, which sets forth federal-question jurisdiction, and states:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331. "Generally, '[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *NYU Hosp. Ctr. Tisch v. Local 348 Health & Welfare Fund*, No. 04 Civ. 6937, 2005 WL 53261, at *1 (S.D.N.Y. Jan. 6, 2005) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)) (internal quotation marks omitted).

## 2.     Remand

After an action is removed from state court to federal court, remand may be granted on one of two grounds: (1) a defect in removal procedure or (2) a lack of subject matter jurisdiction. 28 U.S.C. § 1447. A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." 28 U.S.C. § 1447(c).

**B.  Application**

    **1.  Removal**

Plaintiff filed this action on April 16, 2013 in the New York State Supreme Court, Franklin County. (Def.s' Ex. A) (Dkt. No. 1).  The complaint was ultimately served on defendants on June 5, 2014. (Def.s' Ex. H).  On July 7, 2014, defendants filed a Notice of Removal in this court pursuant to 28 U.S.C. § 1441(a) and 1446. (Dkt. No. 1) (Notice of Removal).  All defendants except defendant Carozzoni joined in the petition for removal.  On a motion to remand, the defendant bears the burden of demonstrating the propriety of removal. *Cal. Pub. Employees' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted).

First, the defendants' notice of removal was timely filed on July 7, 2014. Defendants state that they were served with the complaint on June 5, 2014. (Dkt. No. 1 ¶ 14).  Plaintiff's motion to remand also states that he served the defendants on June 5, 2014. (Dkt. No. 5 ¶ (m)).  Thirty days from Thursday, June 5, 2014 would have been Saturday, July 5, 2014.  However, pursuant to Fed. R. Civ. P. 6(a)(1)(C), when computing time for a period stated in "days or a longer unit," if the last day of the period is a Saturday, Sunday, or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *Id.*  Because July 5, 2014 was a Saturday, defendants had until Monday July 7, 2014 to file their notice of removal.

Second, in their notice of removal, defendants assert that the district court has original jurisdiction over the federal constitutional claims in plaintiff's complaint

pursuant Section 1331. (Dkt. No. 1 ¶ 3). On its face, plaintiff's complaint asserts claims arising under the Constitution of the United States. (*See* Compl. ¶ 25 (alleging that defendants violated plaintiff's federal constitutional rights and bringing this action pursuant to 42 U.S.C. § 1983)). It would appear that removal jurisdiction exists. Nevertheless, plaintiff contends that removal jurisdiction is unavailable.

### 2. Remand

In his motion to remand, plaintiff asserts that because both state court and federal court have jurisdiction over his federal constitutional claims brought under Section 1983, his claims should have remained in state court. (Dkt. No. 5 ¶ (g)). Plaintiff cites *Haywood v. Drown*, which states that "[i]n our federal system of government, state as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983." *Haywood*, 556 U.S. 729, 731 (2009). Although plaintiff is correct that both state and federal courts may entertain suits brought pursuant to Section 1983, this concurrent jurisdiction does not preclude removal. Indeed, it is the existence of concurrent jurisdiction which allows a defendant to remove an action from state court to federal court. *See, e.g., Dorsey v. City of Detroit*, 858 F.2d 338, 341 (6th Cir. 1988) ("The weight of judicial authority supports the conclusion that 'a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited.'") (citing cases); *Pace v. Hunt*, 847 F. Supp. 508, 509-10 (S.D. Miss. 1994) ("[T]he removal statute would be eviscerated if actions such [as those arising under Section 1983] were remanded simply because such courts have concurrent jurisdiction.").

Plaintiff also argues that this court does not have "original jurisdiction" over this

action because plaintiff is subject to the "three-strikes" rule pursuant to 28 U.S.C. § 1915(g), and he could not have filed his action in this court.[7] First, plaintiff is incorrect about the three-strikes rule. The rule does not prevent plaintiff from filing an action in federal court. Rather, it prevents plaintiff from filing an action "in forma pauperis." If plaintiff paid the filing fee, he would be able to file his action, whether he had three-strikes or not.[8]

The three-strikes rule is not "jurisdictional" and would not deprive the court of "original jurisdiction" over the action itself because the action is based upon a federal statute and the United States Constitution. *See Lisenby v. Lear*, 674 F.3d 259, 262-63 (4th Cir. 2012) (nothing in the PLRA or the removal statutes defeats the court's jurisdiction over a section 1983 action, and the requirement that a three-strikes plaintiff pay the filing fee is procedural, not jurisdictional). Thus, the fact that plaintiff would have been barred by the three-strikes rule from filing an action without the prepayment of fees is not a basis for remand.

Plaintiff cites *Bartelli v. Beard*, No. 3:CV-08-1143, 2008 WL 4363645 (M.D. Pa. Sept. 24, 2008), which held that the three-strikes rule applied to a case removed from state court, notwithstanding the payment of the filing fee by the defendants. *Id.* at *5. The court then stated that it was recommending "that the present case of Plaintiff be

---

[7] The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1995). The principal purpose of the statute was to deter frivolous prisoner litigation. *See Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997).

[8] Additionally, as plaintiff is well-aware, the three-strikes rule contains an exception when the plaintiff claims he is in "imminent danger." *See Chavis v. Chappius*, 618 F.3d 162, 169-70 (2d Cir. 2010).

dismissed, pursuant to the three strike rule, without prejudice to allowing him to re-file his action if he pays the full filing fee. In the alternative, we will recommend that this case be remanded to state court." *Id.* The court in *Bartelli* stated that the plaintiff should not be allowed to "circumvent" section 1915(g) by filing his state court action in forma pauperis. *Id.* at *6. Over the defendants' objections, the district court appeared to disregard the Magistrate Judge's recommendation that the case be dismissed without prejudice to plaintiff re-filing and paying the fee, and instead, ordered the alternative relief of remand to state court, without any analysis of the authority to remand. 2008 WL 4363645 at *1-2. In doing so, the court relied upon on *Farnsworth v. Washington State Department of Corrections*, No. C07-206, 2007 WL 1101497 (W.D. Wash. Apr. 9, 2007), in which the court applied section 1915(g) to a case that was removed by the defendants, but ordered dismissal of the action rather than remand to state court.

Plaintiff also cites a Third Circuit case which was a challenge to section 1915(g) itself, but where the court found that the application of section 1915(g) was not unconstitutional and that "the appellant prisoner overlooked the fact that prisoners may seek relief in state court, where limitations on filing *in forma pauperis* may not be as strict." *Bartelli*, 2008 WL 4363645, at *2 (citing *Abdul Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001)).

This court does not agree with the analysis in the cases cited by plaintiff. These cases ignore the fact that the plaintiff did not choose to bring the action in federal court, and the defendants paid the filing fee. Neither court discussed the removal statute or the whether the federal court had the authority to remand the action. This court finds

*Lisenby, supra* and *Dotson v. Shelby County*, No. 13-2766, 2014 WL 3530820 (W.D. Tenn. July 15, 2014) more persuasive. In *Dotson*, the three-strikes plaintiff filed his civil rights action in state court, and defendants removed the case to federal court. *Id.* at *1-2. In analyzing the propriety of removal, the court stated that it considered whether plaintiff's status as a three-strikes filer precluded him from litigating in federal court, but found that because "28 U.S.C. § 1915(g) does not alter the Court's subject-matter jurisdiction, a district court cannot remand a properly removed action to state court on the ground that the prisoner is a three-strike filer." *Id.* at 3 (citing *Lloyd v. Benton*, 686 F.3d 1225, 1227–28 (11th Cir. 2012); *Lisenby v. Lear*, 674 F.3d 259, 262–63 (4th Cir. 2012); *Hartley v. Comerford*, No. 3:13-CV-488, 2014 WL 241759, at *5–6 (N.D. Fla. Jan. 22, 2014) (denying prisoner's motion to remand case on ground that he is a three-strike filer); *Lanier v. Holiday*, No. 05–2203, 2005 WL 1513106, at *2 (W.D. Tenn. June 16, 2005) ("Because the complaint asserts claims pursuant to 42 U.S.C. § 1983, over which the federal courts have original jurisdiction, the defendants have an absolute right to remove it from state court.")

The court in *Dotson* also cited cases in which the plaintiff was allowed to proceed after removal notwithstanding his three-strike status. *Id.* (citing *Gay v. Chandra*, 682 F.3d 590, 596 (7th Cir. 2012) ("The PLRA's three-strikes obstacle does not apply in state courts, where Gay filed this suit."); *Howard v. Braddy*, No. 5:12–CV–404, 2013 WL 5461680, at *4 (M.D. Ga. Sept. 30, 2013) (denying motion to dismiss under § 1915(g) because "[t]he clear language of the statute applies only to actions in forma pauperis . . . . The Court will not construe 28 U.S.C. § 1915(g) to apply

to non- in forma pauperis cases . . . .") (Report-Rec., adopted by district court); *Gray v. Cardoza*, No. CIV S–05–2611, 2006 U.S. Dist. LEXIS 43710, at *5 (E.D. Cal. June 27, 2006) (because the filing fee was paid by counsel for defendant, plaintiff was not barred by 28 U.S.C. § 1915(g) from proceeding in federal court) (Report-Rec.), *adopted*, 2006 U.S. Dist. LEXIS 71167 (E.D. Cal. Sept. 29, 2006); *see also Jae v. Stickman*, No. 12–1332, 2012 WL 5830633 (W.D. Pa. Nov. 16, 2012) (declining to sua sponte dismiss removed case filed by three-strike filer without addressing whether § 1915(g) provided a basis for dismissal)).

Plaintiff also alleges that removal was improper because defendant Carozzoni did not consent to removal. As defense counsel points out, only defendants who have been served must consent to the removal. *Varela v. Flintlock*, 148 F. Supp. 2d 297, 300-301 (S.D.N.Y. 2001). Plaintiff claims that he served defendant Carozzoni on June 5, 2014, at the same time that he served the other defendants, pursuant to the state court judge's order allowing for "alternative service." (Def.s' Ex. G to Notice of Removal). However, the state court's order directed that the defendants be served at their place of employment. (*Id.*) Defense counsel states in his affidavit that defendant Carozzoni's employment with DOCCS ended on April 4, 2014. (Dkt. No. 6 at 8-9 & Whitaker Decl. ¶ 2).[9] Thus, defendant Carozzoni was not properly served on June 5, 2014, nor does it appear that he was served subsequent thereto, and therefore, defendant Carozzoni was not required to consent to the removal.

---

[9] Terry Whitaker is the Deputy Superintendent of Administration at Elmira. (Whitaker Decl. ¶ 1).

Plaintiff has cited no other viable basis for remand. Thus, this court must deny plaintiff's motion to remand and consider defendants' motion to dismiss.

## III. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d

Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## IV.   Statute of Limitations

### A.   Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

## B.   Application

Plaintiff argues that the alleged "retaliatory transfer" took place on November 16, ***2006.*** Plaintiff filed this action in New York State Supreme Court on April 16, ***2013***. (Dkt. No. 1-1 at 3). The plaintiff signed his state court complaint on April 12, 2013. Even assuming that the date of signing is the date of filing, the statute of limitations has run on his "retaliatory transfer" claim. In fact, the statute of limitations has run on any claim that accrued prior to April 12, 2010. This includes any claim based on conduct occurring in 2007 and 2008. (Compl. ¶¶ 16, 17).

There is absolutely no basis for any kind of tolling in this case, equitable or otherwise. Plaintiff is a very frequent litigator, who is well-aware of his rights and the basis for any claims. Mr. Johnson is a plaintiff in approximately 42 civil rights cases in this court alone, including cases filed in 2010, 2011, and 2012. Thus, there is no basis for alleging that he has somehow been prevented from filing lawsuits, except by his own frivolous filings. Thus, this court recommends dismissing any claim accruing

prior to 2010 based upon the statute of limitations. (Compl. ¶¶ 7-17).  This includes any claim for retaliatory transfer in 2006 against defendants Carozzoni and Carvill and any failure to protect claims that accrued prior to 2010 as against any of the defendants.

## V.  Res Judicata

### A.  Legal Standards

Res judicata includes two concepts: claim preclusion and issue preclusion, also known as collateral estoppel. *Rivera v. City of New York*, __ F. App'x __, 2014 WL 5463320, at *2 (2d Cir. Oct. 29, 2014).  Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). *See also Ajamian v. Nimeh*, No. 1:14-CV-320, 2014 WL 6078425, at *2 (N.D.N.Y. Nov. 13, 2014) (citing *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal citations and quotation omitted)).  Under claim preclusion, even if the plaintiff's claims are based upon different legal theories, they are barred in the subsequent action, provided they arise from the same transaction or occurrence. *Id.* (citing *LTec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (per curiam)).

The doctrine of collateral estoppel provides that once a court has actually and

necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case. *Rivera v. United States*, No. 3:10-CV-1970, 2012 WL 3043110, at *2 n.5 (D. Conn. 2012) (discussing collateral estoppel) (citations omitted). Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *Wade v. City of Kingston*, No. 1:13-CV-623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184-85 (2d Cir. 2011) (discussing factors considered for collateral estoppel). Whether a previous federal court judgment has preclusive effect in a subsequent action is a question of federal common law. *NML Capital, Ltd.*, 652 F.3d at 184 (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).

B.    **Application**

In this case, one of plaintiff's claims is that he was attacked on January 7, 2011. (Compl. ¶ 18). Plaintiff does not explain the connection between any of the defendants and this alleged attack, other than his conclusory allegations that he informed defendants in 2006 and 2007 that he had enemies at Upstate. The previous alleged

attack occurred in 2008. (Compl. ¶ 17). In any event, plaintiff raised this claim in one of his many previous federal court actions.[10] *Johnson v. Lynn Boyea*, 9:11-CV-386. (*See* Compl. in 11-CV-386, Dkt. No. 1 at ¶ 1). In 11-CV-386, plaintiff claimed that "On January 7, 2011, at Upstate Correctional Facility Eleven Building lower holding pens at approximately 9:00 a.m. plaintiff was attack[ed] by a gang member [Blood] enemy." *Id.* Plaintiff claimed that defendant Corrections Counselor Trudy Lynn-Caron (now Trudy Lynn-Boyea) was "previously informed of plaintiff's enemies gang members in 2008 and 2011 and has refused to transfer plaintiff from this facility to date." (*Id.* at ¶ 5).

On June 17, 2013, Magistrate Judge David Homer recommended granting defendant Lynn-Caron's motion for summary judgment and dismissing plaintiff's action in its entirety. (Dkt. No. 96 in 11-CV-386). The evidence considered in the motion for summary judgment included a video tape of the incident. (*Id.* at 2-3 & n.4). Magistrate Judge Homer found that plaintiff had failed to allege the requisite "physical injury" to sustain a claim under the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(e). (*Id.* at 9-10). The court also considered plaintiff's "failure to protect" claim under the Eighth Amendment and found that it failed under both the objective and the

---

[10] In 11-CV-386 plaintiff also stated that he has informed defendants Fischer, LeClaire, and David upon his arrival at Upstate that he was "surrounded" by gang members in 2006, 2007, and 2008. (Compl. in 11-CV-386 ¶ 2). This paragraph states that he was "threatened" by these gang members, but there was no indication of any "assaults" between 2008 and 2011. Defendants Fischer, LeClaire, and Knapp-David were dismissed from the action based on a lack of personal involvement. (Dkt. No. 15 at 5-6 (Rep't Rec.); Dkt. No. 17 (Order Approving Rep't Rec.) In this case, even if claims regarding the previous assaults were not barred by the statute of limitations, they would be barred by res judicata because plaintiff clearly could have raised these claims in his previous federal court action against the same defendants.

subjective prong of Eighth Amendment analysis. (*Id.* at 11-13). Judge Homer also found that there was no allegation that either of the inmates had prior physical contact with plaintiff, that defendant Lynn-Caron knew that the inmate was an enemy of plaintiff's, or that the two inmates were going to be placed in the same holding pen. (*Id.* at 12-13). The issue of the 2011 "assault" was fully litigated and decided against plaintiff. Plaintiff had every opportunity to make his claim in 11-CV-386, and he is barred by res judicata and collateral estoppel from bring any claim regarding the 2011 assault against any of the defendants.

## VI.  **Personal Involvement**

### A.    **Legal Standard**

In order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (*citing, inter alia, Williams v. Smith*, 781

F.2d 319, 323–24 (2d Cir. 1986)).[11]  Personal involvement requires that the individual who is, or becomes aware of, the violation, have the ability to take action to correct the problem. *See Conklin v. City of Suffolk*, 859 F. Supp. 2d at 441-42 (personal involvement requires knowledge *and* the ability to take action).

## B.    Application

In this case, plaintiff has named defendants Rock, Fischer, Bezio, LeClaire, Knapp-David, Carvill, and Botsford.  Plaintiff claims that these defendants were told in 2006 that plaintiff had enemies at Upstate. (Compl. ¶ 12).  Plaintiff claims that he wrote a letter to defendants Fischer and Knapp-David in April of 2007, but "to no avail to date." (Compl. ¶ 14).  As stated above, any claims based on conduct prior to 2010 are barred by the statute of limitations.  In addition, defendants Fischer, LeClaire, Knapp-David, Carvill, and Botsford are supervisory defendants who have offices in Albany and do not work at Upstate.  To the extent that plaintiff alleges that he wrote letters to these defendants, but that his letters were ignored, such allegations are insufficient to establish personal involvement. *See Smart v. Goord*, 441 F. Supp. 2d 631, 642-643

---

[11] Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon*, are still viable after *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). *See, e.g., Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.*  In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)).  See also *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at *10-12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

(S.D.N.Y. 2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement).

Plaintiff claims that he was attacked on August 27, 2012. (Compl. ¶ 19). On October 3, 2012, plaintiff claims that someone threw feces at him during recreation. (Compl. ¶ 20). On October 24, 2012, plaintiff claims that a sergeant, assigned to the console, opened the cell door for an inmate who "attempted to come at plaintiff." (Compl. ¶ 21). The complaint does not allege anyone's responsibility for these three incidents. Plaintiff only alleges that the incidents occurred. Although plaintiff titles his next claim "Seven Attack," he only states that in December of 2012, plaintiff informed defendants Fischer and Rock that gang members were "putting plaintiff's life in jeopardy" by placing notes in "numerous meal trays," accusing plaintiff of raping a little girl. (Compl. ¶ 22). Plaintiff does not allege that he was harmed or attacked as a result. Plaintiff alleges only that defendants have not taken any action to protect him. (*Id.*)

There is absolutely no connection between the supervisory defendants and any of the incidents described by plaintiff. The fact that plaintiff may have written to defendant Fischer and some of the other Albany defendants in 2006 or 2007 does not show that they were personally involved in conduct that occurred in 2012. Plaintiff's conclusory allegations are insufficient to allege the requisite personal involvement. Thus, the complaint may be dismissed as to defendants Fischer, LeClaire, Knapp-David, Carvill, and Botsford. The complaint may also be dismissed as against defendants Rock and Bezio. Even though both of these defendants work at Upstate,

22

there is no indication that either of them were aware of any danger with respect to the recent incidents.

## VII. <u>Failure to Protect</u>

### A. Legal Standards

An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.'" *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991) (citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id.* at 113.

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.*

### B. Application

There is absolutely no indication that the defendants were aware of a serious risk of harm to plaintiff. Plaintiff has alleged no injuries as the result of any of the "attacks." This is particularly true in the more recent incidents. Plaintiff alleges only that he was "attacked" on August 27, 2012, that on October 3, 2012, feces was thrown

at him during recreation, and that on October 24, 2012, an inmate "attempted" to come at plaintiff. Plaintiff does not even allege that there was an incident in December of 2012, merely that he informed defendants Fischer and Rock that inmates were placing false accusations in notes which were placed on other inmates' food trays. Plaintiff's failure to protect claims must fail.

## VII.   Opportunity to Amend

In addition to the requirement that pro se complaints must be "liberally construed," the court should generally not dismiss without granting leave to amend at least once. *Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (citing *Cuoco v. Moritsugu*, 222 F.3 99, 112 (2d Cir. 2000)). The court may deny leave to amend when the amendment would be futile. *Id.* (citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999)).

### B.   Application

This case is clearly a situation in which plaintiff should not be afforded the opportunity to amend. As stated above, many of plaintiff's claims are barred by the statute of limitations, and one is barred by res judicata. Plaintiff has brought many similar cases in this district alone. Plaintiff has three-strikes in this court and granting him the opportunity to amend would not be appropriate under the circumstances.

## IX.   Sanctions

### A.   Legal Standards

The court has the authority to sanction parties and attorneys for frivolous and vexatious conduct before the court. *See Mahoney v. Yamaha Motor Corp. U.S.A.*, 290

F.R.D. 363, 367 (E.D.N.Y. 2013) (outlining the various bases for awarding sanctions) (citations omitted).  One of the vehicles by which the court may impose sanctions is through its "inherent power," born of the "practical necessity" for a court to be able to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. *Id.* (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000)).  Similar to sanctions under 28 U.S.C. § 1927, applicable to attorneys, the inherent power to sanction requires that the party requesting sanctions present "'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes.'" *Id.* (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)).  "'A claim lacks a colorable basis when it is utterly devoid of legal or factual basis.'" *Id.* (quoting *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 320 (S.D.N.Y. 2008)).  However, the court must find both lack of merit and improper purpose, neither alone with suffice. *Id.* (citations omitted).

## B.    Application

Defendants move for sanctions against plaintiff, and plaintiff requests sanctions in connection with the removal.  Because this court has found that defendants' removal was proper, plaintiff's request for sanctions must be denied as moot.  Defendants support their request for sanctions on the argument that plaintiff filed his case in New York State court in order to avoid the three-strikes rule in federal court.  However, it was the defendants' choice to remove the action to federal court.  There is concurrent jurisdiction over section 1983 actions in state court, and although this plaintiff may merit sanctions for many of his cases, because this court is recommending dismissal

with prejudice, it is sufficient sanction for the plaintiff.  The court is well-aware that plaintiff has multiple actions that defendants have been removed to federal court, and this court is not precluding a later finding that plaintiff has been vexatious in his behavior.  But the court does not do so at this point.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to remand to state court (Dkt. No. 5) is **DENIED**, and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 2), be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY AS TO ALL DEFENDANTS WITH PREJUDICE**, and it is

**RECOMMENDED**, that defendants' motion for sanctions (Dkt. No. 2) and plaintiff's motion for sanctions (Dkt. No. 5) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **fourteen (14) days** within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Dated: December 3, 2014

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge